## DANIEL MESSER *versus* C. J. SWAN.

C., as principal, and M. S. and G. as sureties, gave a note to a bank. M. paid the amount due upon the note, G. having furnished him with one half the money due. M. then brought an action against S. for contribution and recovered of him one third of the money paid as aforesaid, and refunded to G. one half of the sum so recovered. M. then pursued C., who had absconded, and received of him the amount paid by M. and G.—upon a review of the said action, after this by S. it was held, that for the sake of the remedy, the

sum paid to the bank might be considered as paid by M. although one half the money was furnished by G.—it was also held that, although in general, whatever payment is made to one surety by the principal enures to the benefit of all, yet that rule does not apply to money received by one surety in satisfaction of his claim against the principal, after the sum paid for the principal is adjusted among the sureties, and the first judgment was affirmed.

THIS was an action of assumpsit for money paid, laid out and expended by the plaintiff, for the use of the defendant, in which judgment was rendered for the plaintiff, at May term, 1825, for $89 damages, and $19,53 costs. And now, upon a review of the action brought by Swan, the cause was submitted to the decision of the court upon the following facts.

Rodney Carr, as principal, and Messer, Swan, and Amos Gould, as sureties, made their promissory note for $500, dated October 22, 1823, and payable to the Windsor Bank in ninety days, with interest after ; which note was discounted at said bank and the money received by Carr, who, on the 26th January, 1824, paid to the bank $250 upon said note.

In July, 1824, Messer and Gould paid the balance of said note in equal shares, being $253,25, in the whole, and took up said note. The last mentioned sum was paid over to the bank by Thomas Emerson, as agent for Messer alone, but an equal proportion of the money was furnished by Gould to Messer.

Messer then brought this action against Swan, and took judgment for one third of the sum paid by him and Gould as aforesaid, and afterwards paid to Gould one half of the damages recovered of Swan.

In June, 1825, Messer pursued Carr to Albany, in New York, arrested his body and settled with him for two thirds of the sum paid by Messer and Gould as aforesaid, and gave him a discharge for his own and Gould's proportion, but without any authority from Gould so to do, and Messer still retains in his hands the property he received of Carr upon said settlement.

*Bell*, for the defendant.

The question in this case is, for what sum is the plaintiff entitled to judgment ?

When a person has laid out and expended his own money for the use of another, either with his express or implied assent, the law implies a promise of repayment. 1 Selw. 65 ; 8 D. & E. 310.

When two or more persons become sureties for another, and one of them pays the debt, he may maintain an action of *indebitatus* assumpsit for money paid against each of the co-sureties, to recover his aliquot proportion of the money so paid, regard being had to the number of sureties.   2 Com. Con. 186–187 ; 2 B. & B. 268, *Cowell* v. *Edwards.*

But when three persons are jointly liable to pay a debt, and two of them pay it, they cannot maintain a joint action against the third ; but each must bring his separate action for his aliquot share of the money so paid. 2 Com. Con. 188 ; 3 B. & P. 235, *Brand* v. *Boulcott* ;  2 D. & E. 282, *Graham* v. *Robertson.*   On these principles and authorities, we consider it incontrovertible that the rights of the co-sureties are several, and that each can recover of the other his proportion of what he himself has paid, according to the whole number.   In this case then what are the facts ?   Messer, Gould and Swan, were the sureties of Carr for $250.   Messer and Gould have paid that sum in equal proportions ; and Messer has recovered of Swan one third part of the sum so paid, and has paid to Gould one half of the sum so recovered.   Can that recovery discharge Swan from his liability to Gould for his proportion of the sum paid by the latter ? Clearly not, for it was a recovery beyond the law.   Will the payment do it ?   Clearly not, for it is *res inter alios acta,* and Swan is no party to it, and can in no manner claim the benefit of the payment.   The simple truth is, that Messer recovered twice as much as he was entitled to recover, and that Swan is still liable to Gould for his proportion of the sum paid by the latter.

Messer
*v.*
Swan.

But independently of this objection, what judgment ought to be rendered on the facts of this case ?

There was paid for Carr $250, and Carr has repaid $180, leaving a loss of $70 to be divided among the sureties ; and each is bound to pay one third part of the loss. This is evidently the principle upon which both law and equity must settle the case.

But suppose that Messer had a right to act for himself and secure his own third, he had no authority to act for Gould. How would the case then stand as to him ? He paid originally $125, and has received of Carr $90, his loss then is only $35. But he has recovered of Swan $85. On what principle shall he retain all this ? 17 Mass. Rep. 470.

If this action were now to be tried on the original writ, and as an original action, what would be the right of the parties on this evidence ? It is evident from the above calculation that he would be entitled to recover one third of $35, and that Gould would be entitled to recover a like sum. The loss would thus be equalized among those who incurred it.

This would most evidently be the rule, if the state of facts which now exists, had existed at the commencement of the action. Has the rendition of the original judgment in this case altered the rights of the parties ?

The action of review is a creature of our own, and the rights of the parties in it must be ascertained by our statute, and the decisions under it. The statute declares that actions shall be tried upon review in the same manner as if no judgment had been given. It is therefore perfectly apparent that the case is to be tried now as if the same facts had existed on the original trial. Would the payments received by Messer, after suit brought, go in defence of the original suit ? No one can doubt this ; otherwise no one could be safe in paying anything whatever after suit brought.

*Cartland,* for the plaintiff.

The opinion of the court was delivered by

RICHARDSON, C. J. It is not disputed in this case, that the plaintiff is entitled to judgment against the defendant, but the controversy between the parties is, as to the amount of the sum, for which judgment ought to be rendered. On the former trial the plaintiff recovered $89, being one third of the sum paid to the Windsor bank, and interest. It is now contended, on behalf of the defendant, that the plaintiff is entitled to recover only one sixth part of the amount paid to the bank, and interest, because one half the sum thus paid to the bank was paid by Gould, who is now entitled to maintain an action against this defendant for his due proportion.

We are not prepared to say that the money paid to the Windsor bank may not in law be considered as paid by the plaintiff and Gould, either jointly or severally. But as it was actually paid by the agent of the plaintiff, we have no doubt that it may now be legally considered as paid by the plaintiff. It is not an uncommon thing in the law, to permit a plaintiff to elect to view a transaction in a particular light for the sake of the remedy. Thus if A unlawfully take the goods of B, and sell them for money, B may elect to view A as a wrong doer, and maintain trespass for the injury, or he may consider A as his agent, and, in an action for money had and received, recover whatever A received for the goods.

When we examine the real transaction in this case, we find that the money has in fact been paid by Messer. Gould has paid no more than his due share. The mode in which the business was done, and the light in which Gould and Messer viewed it when transacting, are immaterial. No injustice will be done by viewing the transaction as it now in fact is, that Messer has in reality paid his own share and Swan's, and ought not to be compelled, on this ground, to refund any part of what he has recovered in this case.

If Swan can succeed in recovering back on this review one half of what he has paid the plaintiff under the for-

mer judgment, the plaintiff will have his remedy against Gould to recover the money he may thus refund to Swan, and Gould may maintain an action against Swan and recover the same money. But by viewing the money as paid to the bank by the plaintiff, this circuity of action may be avoided, complete justice may be done to the parties, and no rule of law will be violated.

But it is contended, that a recovery in this case of the whole sum Swan was bound to contribute, will be no bar to an action for contribution by Gould against Swan. If this proposition could be maintained, it would be decisive on this point in favour of the defendant. For if in an action by Gould against Swan, Gould could now be considered as having paid one half of what was paid to the bank, and could recover of Swan one third of what he so paid, it is clear that the latter cannot be liable for that third in this action. But on what ground could Gould sustain such an action? If he showed that he paid to Messer one half the sum paid to the bank, Swan would show that Messer had repaid to Gould all above the one third which the latter was bound to contribute, so that Messer, in fact, had paid two thirds of the sum. And Swan would further show that he had paid to Messer all he was bound to contribute. On what ground, then, could Gould recover? We see no grounds on which such an action could be supported. Gould, by receiving back from Messer all the money he furnished above what he was bound to contribute, may be considered as having elected to view the payment made to the bank as made by Messer, and would be bound by that election in a suit against Swan.

It is further contended, on behalf of the defendant, that what the plaintiff has received of Carr since the former recovery in this case ought to be considered as received for the benefit of all the sureties, and go to lessen the damages for which judgment ought now to be rendered. If the law be so, this case will exhibit a new instance of

the inconveniences attending a review. For if the damages are lessened in any degree on this trial, the plaintiff will not only lose all his costs of review, but be compelled to pay the costs of the defendant. And if the damages are lessened on this ground, the plaintiff will be subjected to all this loss by voluntary exertions on his part, which must, in the eye of the law, be viewed as made for the common benefit of all the sureties. The application of the principle in this case would, therefore, be in the highest degree harsh, unreasonable and severe.

But it is argued, that as the statute regulating reviews declares that the cause shall be tried on review in the same manner as if no judgment had been rendered therein, and as the sum received of Carr by the plaintiff in this case might, had it been reviewed before the first trial, have been given in evidence to reduce the damages, it is now by this provision of the statute made admissible for that purpose.

It is not to be disputed that the cause is to be tried upon review in the same manner as if no judgment had been rendered therein. But what is the meaning of this? Surely not, that every thing which takes place after the first trial shall be used in evidence on the second trial, in the same manner as if it had taken place before the first trial. For instance, where a judgment is rendered in favour of a plaintiff in assumpsit after the first trial, and the defendant pays the amount recovered, it will hardly be contended that such payment can be given in evidence on review, in the same manner as if it had been made before the first trial. It seems to us that the meaning of this clause is only this; the first judgment shall have no weight in the trial of the cause the second time, but shall be wholly disregarded, as furnishing no evidence of the real facts of the case for or against either party. Such being our opinion as to the meaning of the clause, we, of course, hold, that it furnishes no argument which can avail the defendant on this point.

We have no doubt, that in general, whatever payment one surety may receive from the principal shall enure to the benefit of all. But we are not prepared to hold, that this rule applies to money received by one surety in satisfaction of his claim against the principal, after the sum paid for the principal is adjusted among the sureties and each has paid his due proportion.

It is a well settled general rule, that the demands of sureties against the principal for money paid by them severally, are in their nature several, and that they cannot join in a suit against the principal. 3 B. & P. 235, *Brand* v. *Boulcott ;* 3 N. H. Rep. 366, *Pearson* v. *Parker.*

On what ground, then, can a surety claim any portion of what a co-surety has received in satisfaction of his separate claim ? We think there is no ground on which such a claim can be sustained. We have been referred to no adjudged case, which gives any countenance to such a claim, nor has any such case occurred to us in our researches. And we are of opinion, that there is no sound principle of law on which such a claim can be sustained.

We are, therefore, of opinion, that the judgment to be rendered on this review is, that the former judgment be in all things confirmed.