## BAILEY v. WOODS.

If, in erecting a building, the plaintiff deviate from the contract, and the defendant, having notice, acquiesce in the plaintiff's proceeding with the work, or, having once dissented, afterward acquiesce, he will be liable for the value of the building in *quantum meruit.*

Evidence that the defendant, having his attention directed to the deviations committed, did not, so far as the witnesses knew, dissent, is admissible as tending to show his assent. But his own declarations, heard by witnesses on other occasions, if not in the hearing of the plaintiff, are not evidence of his dissent.

The testimony of a deceased witness, given before arbitrators, may be proved as if given in court.

ASSUMPSIT. The declaration alleged that the plaintiff had built a certain wood-shed for the defendant, at his request, and found materials therefor, in consideration of which he promised the plaintiff to pay him as much money as he reasonably deserved to have therefor, &c. There was also a count in *indebitatus assumpsit* for work and labor and materials furnished. The writ was dated August 23, 1841.

Upon the trial, it appeared that in 1840 the plaintiff lived upon a farm belonging to the defendant, in Bath, and that in the spring of that year he made a special contract with the defendant to build a shed adjoining the house upon the farm. The precise terms of contract did not distinctly appear. The plaintiff afterward, in the course of the year, proceeded to erect a shed upon the place, but it was admitted by him that the shed was not built according to the contract, and that he could not recover upon the contract itself, and he claimed to recover only so much as he reasonably deserved to have, by reason of what he had done for the defendant. He introduced evidence to show the character of the materials of which the shed was built, and the manner of building it, and that the

defendant was present at several times during the erection of the shed and spoke about it; but so far as the witnesses heard, he made no objection to its proceeding, and did not intimate that he did not intend to pay for it. On the other hand the defendant introduced evidence tending to show that he, at the time the frame was raised, and at other times, objected that portions of the work were not according to the contract, and that he at one time told the plaintiff it was not such a shed as he wanted, and he would not have it; and he contended that never having accepted the shed, he was not liable to pay any thing for it, notwithstanding it had been built on his land.

The defendant also introduced evidence tending to show that by the contract he was not to pay for building the shed until the expiration of two years from the time of the contract, when the plaintiff's lease would terminate, and it was then to be brought into the general settlement between the parties; but there was evidence on the part of the plaintiff tending to show that no time of payment was specified, or that he was to have his pay when the work was done — there being no time stipulated in which it should be completed. The defendant introduced evidence that, at a hearing before arbitrators, to whom the parties had agreed to submit this controvery, in April, 1841, the defendant inquired of the plaintiff whether he considered the shed done, and that the plaintiff said he did not, and specified certain particulars in which he intended to do more to it; and that after the commencement of this suit, in September, 1841, the plaintiff again said the shed was not done; that there was a mistake in the eaves, which he was going to alter, and thought he should do something more about the under-pinning; and it appeared that since the action was commenced an alteration had been made in the eaves. Upon this evidence the defendant contended that the action could not be maintained, because the time of payment, by the terms of

the contract — whether that time was two years or when the work was done — had not arrived when the action was commenced.

On the examination of a witness named Chase, the plaintiff inquired what testimony a witness, since dead, gave on the hearing respecting this controversy before the arbitrators; to which the defendant objected. But it appearing that the controversy submitted to the arbitrators by the parties was the same as that on trial (the arbitrators having failed to agree upon an award), the court ruled that evidence of what the deceased witness testified before the arbitrators was admissible; to which the defendant excepted. The testimony of the deceased witness was, that he remembered his brother James testifying before the arbitrators something about his carrying some oats into the shed for the defendant.

The court instructed the jury that where a party makes a special contract, and fails to peform all which was to be done, but performs in part, and the other receives the part performance, has the benefit of it, and thereby gets a value over and above the damage occasioned by the failure to perform the contract, according to the terms of it, he must pay the balance — that he must pay for what he takes, a price in proportion to the whole which was to be paid, deducting the damages. But if the party who was to receive, can reject the whole of what has been done in the attempt to perform, and in fact receives nothing, he is not obliged to take what he did not contract for; and unless there had been in fact a part receipt, he was not obliged to pay, unless the contract was performed according to the terms of it. The same rule applies in a contract to labor for a year, where there had been a part performance only; the part performed having been accepted at the time, must be paid for, if beneficial. That where there was a contract to erect a building in a particular mode, if there was a total departure, as by building of

wood instead of brick, &c., the owner of the land would not be liable to pay, unless there had been an acceptance; but that an acceptance might be shown from circumstances; as that he saw the work going on and did not object, or, if he objected, let it go on still as if he intended to take it; and when there was an implied acceptance in this way, the party would be liable to pay; that where there was not a total departure, but a building of the kind contracted for was begun and proceeded in, so far as to be affixed to the land before a variation occurred, and was part finished, and then a variation occurs, the owner of the land might stop the matter then, and would be liable only for what had been done, deducting the damages; that the unfinished building having become part of the real estate by its erection thus far, stood like labor received in part, and the owner of the land must pay the value received up to the time of the refusal; that if the owner in such case objects and forbids any thing further to be done, he is not liable for what is done after, unless, after forbidding it, he permits the work to be finished; that a departure from the contract having occurred, the employer is not bound to permit the other party to go on, and if the employer forbids the further prosecution of the work and the other party proceeds in defiance of that, he cannot recover for what he does afterward; that if the departure occurs before the building is affixed to the land, before the frame is raised, it is like the case of a contract for a carriage; the employer is not bound to take it, is not bound to permit a building to be erected, such as he did not contract for, and not obliged to pay any thing; that a frame in process of erection is not such a fixture that the owner of the land can be compelled to see it put up, when different from the contract, and to pay for it, if he objected and refused before it was put up, and did not assent afterward; that if a party for whom work of that character is to be done, at the earliest time there is

a departure, and while the other can appropriate to his own use what has been done, notifies the other not to proceed, and does nothing after to accept, he is not chargeable. But if he expresses dissatisfaction merely, but permits the work to go on without giving notice that he will not take it, his permitting it to be erected under such circumstances would render him liable to pay ; and that if he sees the work go on with variations, and makes no objections, that is evidence of assent. And the court instructed the jury that if the defendant in this case objected at the time the plaintiff was putting up the frame, and refused to receive it, and never assented afterwards, their verdict must be for the defendant. But if he made a mere expression of dissatisfaction under circumstances indicating permission to proceed, then that point of the defence must fail.

The court further instructed the jury, that where, by such special contract, a time was limited for the payment, a party to it could not sustain an action before the time of payment arrived ; that he could not do that, if he fulfiled the contract, and that he could not be in a better situation if he failed to fulfil it ; that where a credit is to be given by the terms of the contract, that stipulation extends as well to a case where all the work has not been performed as to a case where the contract is completed ; but where by the contract the time of payment is left indefinite, so that the party, when he had performed it, would be entitled to payment, there, after part performance and acceptance, he might call for pay for what he had done. And the court instructed the jury that if they found in the evidence in this case that the time of payment for the shed was, by the contract, to be at the expiration of the plaintiff's lease, their verdict must be for the defendant ; but that if they did not find that, the fact that the shed was not done (appearing by the plaintiff's own admission), when the suit was brought, was not a bar

of itself, if the defendant had accepted of what had been done; that nothing, however, could be recovered for anything done after the action was commenced.

To these instructions the defendant excepted, and, the jury having returned a verdict for the plaintiff, moved for a new trial.

*Hibbard & Wilcox*, for the defendant, cited 1 Conn. 387; 2 Cow. Phill. 289, and 18 Pick. 434.

*Goodall & Morrison*, for the plaintiff, cited *Atkinson* v. *Bell*, 8 B. & C. 277; *Morrill* v. *Johnson*, 7 Johns. 473; *Johnson* v. *Hunt*, 11 Wend. 135; *Hayward* v. *Leonard*, 7 Pick. 180; *Clark* v. *Franklin*, 7 Leigh. 1; *Britton* v. *Turner*, 6 N. H. Rep. 481; *Dubois* v. *Canal Co., 4* Wend. 290; 2 Phill. Ev., 833; 2 Kent Com. 361; 3 Dane's Abr. 108; *Bank* v. *Hyde*, 4 Cow. 567; 2 Russ. on Crimes 520, note; *State* v. *Stevens*, 4 McCord 165.

GILCHRIST, J. The instructions of the court, as they related in general to the right of the plaintiff to recover upon a *quantum meruit* for the work done and material found by him, in erecting the building upon the land of the defendant, were in conformity with what must be regarded as the settled doctrine of law applicable to such cases. That there was a special contract, which prescribed the manner in which the work should be executed, and that there was a deviation from that contract, and a failure on the part of the plaintiff to comply with some of its terms, are facts which do not preclude him from recovering a just compensation, if these deviations were known and acquiesced in by the defendant, and if the completion of the work was prevented by him. And when the deviations from the plan furnished by the contract are made known to the party entitled to insist upon a compliance with it, his assent, as in like cases, may be

safely presumed, if he, having opportunity, and having his attention expressly directed to the subject, do not insist upon his rights with such a degree of consistency and firmness as shall amount to a notice of his dissent. A mere complaining of the aberration, while it might have been rectified, followed by conduct and language that indicate acquiescence, will not entitle him, when the work has proceeded too far for remedy, to take advantage of the faulty particular. His conduct in such a case, to be fair, should be decided and intelligible, and the jury were properly instructed to inquire whether assent and acquiescence did not follow any language of complaint or of dissent, which the defendant was shown to have used upon seeing the frame of the building before it was affixed to the soil. *Britton* v. *Turner*, 4 N. H. Rep. 481; *Wadleigh* v. *Sutton, id.* 15; *Hayward* v. *Leonard*, 7 Pick. 181; *Smith* v. *Cong. M. House,* 8 *id.* 178.

The plaintiff was permitted to show, in evidence of the defendant's assent to the plan of the building, as it was in the course of being erected, that being present he did not, so far as the witnesses heard, make any objection. This is not, perhaps, very strong and convincing evidence of his assent; and yet it is fair that the jury should consider it, and draw the proper inferences as to the fact in dispute. Whether the defendant's expressions of disapprobation would, under the circumstances, supposing them to have been uttered, have been such as to engage the attention of the witnesses, was a question for them to consider, in giving its proper value and effect to the evidence. Silence in such a case, if proved, would have been a fair ground from which to have inferred the assent which the plaintiff would impute, and silence is a negation which can be established only by such kind of evidence as that which was the subject of the exception. We think that it was properly received.

But its admission furnished no ground for the admis-

sion of evidence that on other occasions, and in the hearing of other witnesses, the defendant did dissent, unless there be evidence that the plaintiff heard him. These declarations fall under the general rule excluding the words of a party offered to sustain his own cause, and are not embraced in any of the exceptions to which the rule is subject. The inference to be drawn from the defendant's silence on one occasion, on which words would have availed something, is too feeble to require to be met by evidence that he was clamorous to no purpose on another occasion.

It does not seem to be an objection to the competency of the evidence of the deceased witness, that it was given at a hearing before arbitrators. We do not understand that the admissibility of such evidence depends so much upon the particular character of the tribunal, as upon other matters. If the testimony be given under oath in a judicial proceeding, in which the adverse litigant was a party, and where he had the power to cross-examine, and was legally called upon to do so, the great and ordinary tests of truth being no longer wanting, the testimony so given is admitted in any subsequent suit between the parties. Greenl. Ev. 1. It seems to depend rather upon the right to cross-examine, than upon the precise nominal identity of the parties. *Id.* An arbitration is a judicial proceeding, and the principle of the rule seems to apply as well to cases of this character as to technical suits at law.

And the admitted testimony of Chase as to what the witness testified at the arbitration, was material, as showing that the defendant made use of the shed. If one knowingly avail himself of another's acts, done for his benefit, this will be an admission of his liability to pay a reasonable compensation. *Morris* v. *Burdett*, 1 Camp. 218, where a candidate made use of the hustings erected for an election. *Abbott* v. *Hermon*, 7 Greenl. 118, where a

school-house was erected for a district.' *Hayden* v. *Madison, id.* 76, which was the case of a partial payment for making a road.

The result is that the rulings and instructions of the court at the trial were all, in our opinion, correct, and there must be

*Judgment on the verdict.*